UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW MARTIN KOWALEVICZ, JR.,   )
                                 )
                 Plaintiff,      )       Civil Action No. 16-CV-2494 (EGS)
                                 )
        v.                       )
                                 )
THE UNITED STATES OF AMERICA,    )
                                 )
                 Defendant.      )
_____)

**DEFENDANT'S MOTION TO DISMISS**
**AND MOTION FOR SUMMARY JUDGMENT**

Defendant United States respectfully moves to dismiss Counts I, IV, V, and VI for failure

to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure ("FRCP"); and for summary judgment in its favor on Counts II and III

pursuant to Rule 56 of the FRCP.  In support of this motion, the United States submits the

attached memorandum of law and statement of material facts and its exhibits.

Dated:  May 11, 2017

                               Respectfully submitted,

                               CHANNING D. PHILLIPS, D.C. Bar # 415793
                               United States Attorney

                               DANIEL VAN HORN, D.C. Bar # 924092
                               Chief, Civil Division

                               By:  /s/ Marsha W. Yee
                               MARSHA W. YEE
                               Assistant United States Attorney
                               Civil Division
                               United States Attorney's Office
                               555 4th Street, N.W.
                               Washington, D.C. 20530
                               Telephone:  (202) 252-2539
                               Email:  Marsha.Yee@usdoj.gov

                               *Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW MARTIN KOWALEVICZ, JR.,  )
                                )
            Plaintiff,          )        Civil Action No. 16-CV-2494 (EGS)
                                )
    v.                          )
                                )
THE UNITED STATES OF AMERICA,   )
                                )
            Defendant.          )
_____ )

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

Page

FACTUAL BACKGROUND .................................................................................................... 2

STANDARDS OF REVIEW .................................................................................................... 3

I.     Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) ............................. 3

II.    Motion for Summary Judgment Under Rule 56 ................................................................ 4

III.   The Federal Tort Claims Act ............................................................................................. 5

ARGUMENT ............................................................................................................................ 6

I.     The Court Should Dismiss Counts I, IV, V and VI for Failure to State a Claim................ 6

       A.     The Complaint Fails to State a Negligence Claim (Count I) .................................. 6

       B.     The Complaint Fails to State an Abuse of Process Claim (Count IV).................... 6

       C.     The Complaint Fails to State an Intentional Infliction of Emotional Distress
              Claim (Count V) ..................................................................................................... 8

       D.     The Complaint Fails to State a Negligent Infliction of Emotional Distress
              Claim (Count VI) .................................................................................................. 11

II.    The Court Should Grant Summary Judgment in Favor of the United States on
       Counts II and III.............................................................................................................. 12

       A.     The Alleged False Arrest Claim (Count II) Fails Because There Was
              Probable Cause to Arrest Kowalevicz .................................................................. 13

       B.     The Alleged Malicious Prosecution Claim (Count III) Fails Because the
              Criminal Case Did Not Terminate in Kowalevicz's Favor and There Was
              Probable Cause to Initiate Criminal Proceedings ................................................. 15

CONCLUSION........................................................................................................................ 18

This case arises from a November 13, 2013 traffic stop and arrest in the District of Columbia. At approximately 11 p.m. that day, while on patrol in a marked police cruiser, United States Park Police ("USPP") Officer Lucas Coleman observed a vehicle fail to signal a lane change and a turn, and drift out of its lane and make a sudden stop. Officer Coleman then initiated a traffic stop. Plaintiff Andrew Martin Kowalevicz, Jr. was the driver of that vehicle.

When Officer Coleman came up to the driver's side window, he immediately detected a strong odor of alcohol emanating from the vehicle. Before Officer Coleman said anything, Kowalevicz yelled, "TELL ME WHY YOU STOPPED ME!" Officer Coleman observed that Kowalevicz's speech was slurred and his eyes were red, bloodshot, and watery. Kowalevicz admitted that he had a drink. Officer Coleman asked Kowalevicz to step out of his vehicle for standard field sobriety tests. Based on his training and experience, Officer Coleman concluded that Kowalevicz's performance on those standard field sobriety tests indicated intoxication. Officer Coleman arrested Kowalevicz for driving under the influence of alcohol or drugs. About an hour after the arrest, when a breathalyzer test was administered to Kowalevicz at a USPP station, the results were negative, with .000 blood alcohol content.

Defendant United States now moves to dismiss the alleged claims for negligence (Count I), abuse of process (Count IV), intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI) for failure to state a claim. In addition, the United States moves for summary judgment in its favor for the alleged claims for false arrest (Count II) and malicious prosecution (Count III) because, *inter alia*, Officer Coleman had probable cause to arrest and initiate criminal proceedings against Kowalevicz for driving under the influence of alcohol or drugs. Furthermore, the .000 breathalyzer test results did not vitiate probable cause for Kowalevicz's arrest or the initiation of a criminal case against Kowalevicz.

## FACTUAL BACKGROUND

The complaint acknowledges that Officer Coleman stated that Kowalevicz "failed to signal and then later swerved into another lane before coming to another stop," but nonetheless alleges in a conclusory fashion that Officer Coleman followed and stopped Kowalevicz's vehicle "[f]or no valid reason, without reasonable articulable suspicion that a crime had been committed and without probable cause."  Compl. ¶ 7.  It further alleges, again in a conclusory fashion, "[d]espite the fact that [] Kowalevicz was clearly not impaired in any way, or under the influence of alcohol or any other substance, Officer Coleman subjected [Kowalevicz] to multiple field sobriety tests," and "[Kowalevicz] had no problem with the tests."  *Id.* ¶ 8.  "Despite this, Officer Coleman arrested [Kowalevicz] on suspicion of Driving Under the Influence of Alcohol."  *Id.* At a USPP station, another officer "administered an intoxiimeter breathalyzer test approximately one hour after [Kowalevicz's] arrest and obtained two breath samples from [Kowalevicz]."  *Id.* ¶ 9.  "The readings came back as .000."  *Id.*  "[D]espite the fact that [Kowalevicz's] breath alcohol levels twice registered at .000, and without requesting any further tests, Officer Coleman and other employees of the Defendant United States who assisted him initiated and perpetuated criminal traffic charges against [] Kowalevicz."  *Id.* ¶ 10.  "This resulted in [] Kowalevicz being charged in DC Superior Court with criminal misdemeanor traffic offenses of Driving Under the Influence of Alcohol or a Drug and Operating a Vehicle While Impaired in Case 2013 CTF 021193."  *Id.*[1]  The complaint baldly asserts, "the prosecution was terminated in [Kowalevicz's] favor."  *Id.* ¶¶ 26, 32; *see also id.* ¶ 12.

---

[1]    Despite acknowledging that Kowalevicz was charged with misdemeanors, the complaint alleges "[t]hese charges have penalties that can include significant periods of incarceration and significant fines for a first offense."  Compl. ¶ 10.  The Court should not accept the complaint's characterization of the penalties for these charges, which are set out in the D.C. Code.  *See Earle v. Dist. of Columbia*, 707 F.3d 299, 308 n.10 (D.C. Cir. 2012) (recognizing "[courts] may take judicial notice of statutes").

Based on the USPP's stop, arrest, and initiation of criminal traffic charges, the complaint alleges claims against the United States for negligence (Count I), false arrest (Count II), malicious prosecution (Count III), abuse of process (Count IV), intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI). Compl. ¶¶ 13-44. The complaint requests $10 million in damages, plus attorneys' fees and costs. *Id.* at 12-13.

For its motion for summary judgement, the United States incorporates herein the attached Defendant's Statement of Material Facts.

## STANDARDS OF REVIEW

## I.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a court may begin by identifying pleadings that are no more than legal conclusions and therefore "are not entitled to the assumption of truth." *Id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff 'the benefit of all

3

inferences that can be derived from the facts alleged.'" *Hampton v. Comey*, No. 14-CV-1607 (ABJ), 2016 WL 471277, at *4 (D.D.C. Feb. 8, 2016). "Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Id.* "In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'" *Id.* For example, a court may take judicial notice of statutes and criminal docket sheets. *Earle v. Dist. of Columbia*, 707 F.3d 299, 308 n.10 (D.C. Cir. 2012) (recognizing "[courts] may take judicial notice of statutes," and "facts of record in other proceedings"); *Thorp v. Dist. of Columbia*, 142 F. Supp. 3d 132, 145 (D.D.C. 2015) ("The Court may take judicial notice of this criminal docket sheet when adjudicating a motion to dismiss, and will do so here.") (citation omitted).

The Court need not assume as true allegations that are contradicted by a document incorporated into the complaint or matters subject to judicial notice. *See Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 89 (D.D.C. 2015) (rejecting plaintiff's allegations that were flatly contradicted by a document incorporated into the complaint).

## II.    MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

"The principal purpose of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses." *Thompson v. McDonald*, 169 F. Supp. 3d 170, 179 (D.D.C. 2016). "The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact." *Id.* "In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial." *Id.* "The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence." *Id.*

"In considering a motion for summary judgment, a court must 'eschew making credibility determinations or weighing the evidence.'" *Id.* "All underlying facts and inferences must be analyzed in the light most favorable to the non-movant." *Id.* "Nevertheless, conclusory assertions offered without any evidentiary support do not establish a material issue for trial." *Id.*

### III.   THE FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act ("FTCA") "waives the sovereign immunity of the United States with respect to 'claims arising from certain torts committed by federal employees in the scope of their employment[.]'" *Smith v. United States*, 121 F. Supp. 3d 112, 118 (D.D.C. 2015). "[T]he FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law." *Id.* (internal quotation marks omitted). Where a complaint arises entirely from acts that occurred in Washington, D.C., "th[e] Court must consult District of Columbia tort law when assessing the complaint's FTCA claims." *Id.* All defenses available under District of Columbia law with respect to a plaintiff's underlying claims for false arrest and malicious prosecution apply with equal force to any derivative FTCA claims against the United States. *Id.*

5

**ARGUMENT**

I.    **THE COURT SHOULD DISMISS COUNTS I, IV, V AND VI FOR FAILURE TO STATE A CLAIM**

    A.    **The Complaint Fails to State a Negligence Claim (Count I)**

"[I]ntent and negligence are regarded as mutually exclusive grounds for liability." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015) (internal quotation marks omitted). "Merely using the term negligence does 'not raise a cognizable claim of negligence.'" *Id.*

Here, the complaint fails to provide factual allegations that give rise to a plausible negligence claim. Instead, the factual portion of the complaint only refers to intentional acts by Officer Coleman, such as his decisions to follow and stop Kowalevicz's vehicle, to administer field sobriety tests, to arrest Kowalevicz, and to initiate criminal traffic charges. *See* Compl. ¶¶ 7-10. Merely adding the term "negligently" in describing those acts is insufficient to state a claim for negligence.

Accordingly, the Court should dismiss the alleged negligence claim with prejudice.

    B.    **The Complaint Fails to State an Abuse of Process Claim (Count IV)**

"The essence of the tort of abuse of process is the use of the legal system to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Hampton v. Comey*, No. 14-CV-1607 (ABJ), 2016 WL 471277, at *22 (D.D.C. Feb. 8, 2016) (internal quotation marks omitted). "The critical concern in abuse of process cases is whether process was used to accomplish an end unintended by law, and whether the suit was instituted to achieve a result not regularly or legally obtainable." *Id.* (internal quotation marks omitted).

6

"The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use *after* issuance." *Id.* (internal quotation marks omitted; emphasis added). "Thus, in addition to ulterior motive, one must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Id.* (internal quotation marks omitted).

Here, the complaint fails to state a claim for abuse of process. There is no allegation in the complaint that the USPP initiated criminal traffic charges to pressure Kowalevicz to take some action or to prevent him from taking some action. *See* Compl. ¶¶ 31, 33. Even if it were true that Officer Coleman committed some wrongdoing in the course of his interactions with Kowalevicz and initiated criminal traffic charges against Kowalevicz with the ulterior motive of covering up that wrongdoing, *id.* ¶ 33, that would still fail to state a claim for abuse of process. *See Scott v. Dist. of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) ("The fact that the officers expected to realize some benefit by covering up their own alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process."). In fact, like the officers in *Scott*, Officer Coleman "instituted the criminal charge for precisely the purpose for which it was intended: establishing that [Kowalevicz] was guilty of a criminal offense." *Id.*

Accordingly, the Court should dismiss the alleged abuse of process claim with prejudice.

### C.    The Complaint Fails to State an Intentional Infliction of Emotional Distress Claim (Count V)

"The elements of an [intentional infliction of emotional distress] claim are:  (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015).  "The requirement of outrageousness is not an easy one to meet."  *Id.* (internal quotation marks omitted).  To state a claim for intentional infliction of emotional distress, [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (internal quotation marks omitted).  "Whether the conduct complained of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss."  *Id.*  "[N]o liability can be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 163 (D.C. 2013) (internal quotation marks omitted).

The standard for "severe emotional distress" is high, "requiring 'emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result.'"  *Id.* at 164. "'Recovery is not allowed merely because conduct causes mental distress.'"  *Id.* (internal quotation marks omitted).  "[E]mbarrassment and difficulty do not approach the level of foreseeable harm essential to establish [] intentional tort liability."  *Id.* (internal quotation marks omitted).

At best, the alleged intentional infliction of emotional distress claim appears to be based on (i) inferences that Officer Coleman (a) did not actually observe Kowalevicz driving unsafely, and (b) incorrectly determined that Kowalevicz's ability to operate a motor vehicle was impaired by alcohol or drugs, *see* Compl. ¶¶ 7, 8; and (ii) Kowalevicz's mistaken belief that the .000

8

breathalyzer test results at the station vitiated probable cause for his arrest and prosecution, *see id.* ¶ 37 (alleging the USPP "fraudulently initiat[ed] misdemeanor criminal traffic proceedings against [Kowalevicz] despite the fact that [his] breath alcohol level tested at .000").

To the extent the complaint alleges that Officer Coleman filed a false police report, that conduct, standing alone, is insufficiently outrageous to state a claim for intentional infliction of emotional distress.  *See Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) (holding, as a matter of law, that "initiating a complaint with the police . . . , even if false, is not conduct that rises to the [requisite] level of 'outrageousness'" for an intentional infliction of emotional distress claim).

In addition, putting aside a conclusory assertion that "[t]he arrest occurred for a significant amount of time," Compl. ¶ 18, the complaint fails to allege any facts about the nature or duration of Kowalevicz's detention that, if true, would support the conclusion that the USPP acted in a manner that was "utterly intolerable in a civilized community."[2]  Nor does the complaint provide sufficient factual allegations to show that Kowalevicz could meet the "severe emotional distress" prong.  *See Ortberg*, 64 A.3d at 164 ("[E]mbarrassment and difficulty do not approach the level of foreseeable harm essential to establish [] intentional tort liability.").

To the extent that the complaint alleges that Kowalevicz's negative breathalyzer test results at a USPP station vitiate probable cause for his arrest and prosecution,[3] that is incorrect. In *Reiver v. District of Columbia*, a police officer arrested the plaintiff-driver for driving under

---

[2]     In fact, the duration of this incident, from the time of Kowalevicz's arrest to the time the USPP released Kowalevicz from its custody, was approximately 2.5 hours.  *See* Ex. A (Coleman Decl.) ¶¶ 5, 30.

[3]     The legal standard for impairment, which does not primarily focus on impairment that can be discerned only through measurement of the amount of alcohol in the breath or blood, is an additional reason why Kowalevicz's negative breathalyzer test results did not vitiate probable case for his arrest and prosecution.  *See infra* Part II.A.

the influence and/or operating a vehicle while impaired after the driver failed two field sobriety tests, admitted to drinking a beer earlier that evening, had been driving with his headlights off at 11:30 p.m., and continued driving for six blocks even though he was being followed by a police car that had lights and sirens activated.  925 F. Supp. 2d 1, 3-4, 12-13 (D.D.C. 2013).  A breathalyzer test at the station, however, returned a blood alcohol level of .00.  *Id.* at 4.  As the Court recognized in *Reiver*, "[w]hile the breathalyzer test result is one factor to be added to the probable cause analysis, it did not wipe the slate clean of the prior information."  *Id.* at 12. Accordingly, the Court concluded that the officers were entitled to qualified immunity for continuing to process the driver's arrest, in spite of the negative breathalyzer test result.  *Id.*

Kowalevicz's negative breathalyzer test results at the station "did not wipe the slate clean" of the prior information that was obtained at the time of his arrest for driving under the influence.[4]  That prior information providing evidence of his impairment included his failed field sobriety tests; his admission to drinking earlier that evening; his driving without signaling a lane change and a turn; his vehicle drifting out its lane and making a sudden stop; and his stopping in the middle of the lane, blocking traffic flow, in response to Officer Coleman's activation of his police cruiser's emergency equipment and lights.  Def.'s Statement of Material Facts ("SMF") ¶¶ 3-8, 11-17.

Accordingly, the Court should dismiss the alleged intentional infliction of emotional distress claim with prejudice.

---

[4]    Because this portion of the United States' argument relies upon Defendant's statement of material facts, the United States moves in the alternative for summary judgment in its favor on Count V.

**D.** **The Complaint Fails to State a Negligent Infliction of Emotional Distress Claim (Count VI)**

"Under District of Columbia law, a plaintiff may make out a claim for negligent infliction of emotional distress in one of two ways." *Clark v. Dist. of Columbia*, No. 16-385 (CKK), 2017 WL 1011418, at *3 (D.D.C. Mar. 14, 2017).  One way is for a plaintiff to show that "(1) the plaintiff was in the zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for his own safety, and (4) the emotional distress so caused was serious and verifiable." *Id.* (internal quotation marks omitted).

The alternative way is for a plaintiff to show "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Id.* (internal quotation marks omitted).  "The determination of whether a relationship or undertaking implicates a plaintiff's emotional well-being must be made on a case-by-case basis." *Id.* at *4.

Here, the complaint does not allege that Kowalevicz was ever in "the zone of physical danger."  Instead, the complaint relies solely on alleging or appearing to allege that Officer Coleman, as a "Federal Law Enforcement Officer," had the requisite relationship or had undertaken an obligation to Kowalevicz as a suspect or arrestee. *See* Compl. ¶ 41.  That allegation is insufficient to state a claim for intentional infliction of emotional distress.

As the Court noted in *Clark*, "[w]hile the investigation of Plaintiff as a suspect in criminal activity and his related arrest may be emotionally distressing to Plaintiff if conducted negligently, it does not form the type of relationship or undertaking between [the investigating

11

officer who obtained information that was the basis for an arrest warrant] and Plaintiff that would give rise to a negligent infliction of emotional distress claim." 2017 WL 1011418, at *5. "To hold otherwise would extend a cause of action to the target of any criminal investigation against an investigating officer." *Id.*

Like the plaintiff in *Clark*, Kowalevicz cannot state a claim for negligent infliction of emotional distress. The USPP undertook the obligation to investigate and arrest Kowalevicz for a law enforcement purpose, to investigate whether Kowalevicz was driving under the influence of alcohol or drugs and to apprehend him, for the benefit of the community. That obligation was not undertaken for Kowalevicz's benefit, let alone an obligation that necessarily implicated Kowalevicz's emotional well-being.

Accordingly, the Court should dismiss the alleged negligent infliction of emotional distress claim with prejudice.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE UNITED STATES ON COUNTS II AND III

As a preliminary note, the Court should reject the complaint's legal conclusion that Officer Coleman lacked any valid legal reason to stop Kowalevicz's vehicle. *See* Compl. ¶ 7. "[W]hen officers observe a traffic violation, stopping the vehicle is objectively reasonable, and a traffic stop that is supported by objectively reasonable circumstances is legal[.]" *Hamid v. United States*, No. 16-730 (CKK), 2017 WL 1194335, at *3 (D.D.C. Mar. 30, 2017) (internal quotation marks omitted). "[E]ven a relatively minor offense that would not of itself lead to an arrest can provide a basis for a stop for questioning and inspection of the driver's permit and registration." *United States v. Mitchell*, 951 F.2d 1291, 1295 (D.C. Cir. 1991) (internal quotation marks omitted). Here, Officer Coleman's declaration indicates that he stopped Kowalevicz's vehicle after observing the vehicle fail to signal a lane change and a turn, and drift out of its lane

12

and make a sudden stop.  Ex. A (Coleman Decl.) ¶¶ 6-8.  Officer Coleman's observations of Kowalevicz's unsafe driving provided objectively reasonable circumstances for the traffic stop.

In addition, "there is no legal requirement that there be probable cause before an officer can administer a field sobriety test."  *Reiver v. Dist. of Columbia*, 925 F. Supp. 2d 1, 8 n.5 (D.D.C. 2013) (internal quotation marks omitted).  "[A] field sobriety test is such a minimal intrusion on the driver of the car that only reasonable suspicion is required to conduct such a test."  *Rogala v. Dist. of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998).  Here, Officer Coleman's observations of Kowalevicz's unsafe driving, the strong odor of alcohol emanating from his vehicle, slurred speech, red, bloodshot and watery eyes, and admission that he had a drink, provided reasonable suspicion for Officer Coleman to administer standard field sobriety tests to Kowalevicz.  SMF ¶ 10.

### A. The Alleged False Arrest Claim (Count II) Fails Because There Was Probable Cause to Arrest Kowalevicz

"Under District of Columbia law, the existence of probable cause is an affirmative defense that can be raised in response to an accusation of false arrest."  *Smith v. United States*, 121 F. Supp. 3d 112, 119 (D.D.C. 2015).  "Probable cause to arrest exists if the arresting officer had sufficient information to support a reasonable belief that the suspect ha[d] committed or at that time was committing an offense."  *Id.* (internal quotation marks omitted).  "[I]f there was sufficient information to support a reasonable belief that [a suspect] committed [the crime for which he was arrested], then there was probable cause to arrest him, and any claim arising out of his allegedly false arrest must be dismissed."  *Id.* at 120.  "[T]he test for determining whether or not the police had sufficient information and a reasonable belief that the suspect had committed a crime is dependent entirely on the facts as they actually occurred—*i.e.*, on the objective facts— without regard to what a police officer may have actually, even reasonably, perceived the facts to

13

be." *Id.* (internal quotation marks omitted).  "To determine whether the arresting officer had

probable cause or a good faith belief, the court evaluates the evidence from the perspective of the

officer, not the plaintiff."  *Pointer v. Dist. of Columbia*, 736 F. Supp. 2d 2, 9 (D.D.C. 2010).

Officer Coleman arrested Kowalevicz for driving under the influence.  *See* D.C. Code

§ 50-2206.11 ("No person shall operate or be in physical control of any vehicle in the District:

(1) While the person is intoxicated; or (2) While the person is under the influence of alcohol or

any drug or any combination thereof.").[5]  The standard for driving under the influence (and

operating a vehicle while impaired) is "correctly expressed as that level of impairment at which a

person is *appreciably* less able, either mentally or physically or both, to exercise the clear

judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a

modern automobile with safety to himself and the public."  *Muir v. Dist. of Columbia*, 129 A.3d

265, 272 (D.C. 2016) (internal quotation marks omitted; emphasis in original).  "Appreciably" is

the more appropriate word than "the slightest degree of impairment," because "it connotes

primarily that the impairment must be capable of being perceived by the naked senses, whereas

to the slightest degree . . . may imply a primary focus on the level of impairment that can be

discerned only through measurement of the amount of alcohol in the breath or blood."  *Id.*

(internal quotation marks omitted).  Moreover, "it is not necessary to be drunk in order to violate

the [driving under the influence] statute; to prove that a defendant is guilty of [driving under the

---

[5]     Under District of Columbia law, the operating a vehicle while impaired statue provides "No person shall operate or be in physical control of any vehicle in the District while the person's ability to operate or be in physical control of a vehicle is impaired by the consumption of alcohol or any drug or any combination thereof."  D.C. Code § 50-2206.14.  "Impaired" means "a person's ability to operate or be in physical control of a vehicle is affected, due to consumption of alcohol or a drug or a combination thereof, in a way that can be perceived or noticed."  D.C. Code § 50-2206.01(8).

influence], the prosecution need not prove any specific degree of intoxication." *Reiver v. Dist. of Columbia*, 925 F. Supp. 2d 1, 9 (D.D.C. 2013) (internal quotation marks omitted).

Based on his training and experience, Officer Coleman concluded Kowalevicz's performance on the standard field sobriety tests indicated intoxication.  SMF ¶ 17.  In conjunction with his other observations (*i.e.*, Kowalevicz's unsafe driving; the strong smell of alcohol emanating from his vehicle and from his person; his slurred speech; his red, bloodshot, and watery eyes; and his admission that he had a drink), Officer Coleman determined that he had reasonable cause to believe that Kowalevicz's ability to operate a motor vehicle was impaired by alcohol or drugs.  *Id.*  The District of Columbia's Office of the Attorney General ("OAG") concurred that there was probable cause for Kowalevicz's arrest and that there was sufficient evidence to prosecute Kowalevicz for driving under the influence (and operating a vehicle while impaired) twice, first when it signed the *Gerstein* and again when a USPP investigator contacted OAG in investigating Kowalevicz's false arrest complaint made through his United States representative.  *Id.* ¶¶ 23, 27.

Based on the above, no reasonable jury could conclude that the USPP lacked probable cause to arrest Kowalevicz.  Accordingly, the Court should grant summary judgment in favor of the United States for the alleged false arrest claim.

> **B.      The Alleged Malicious Prosecution Claim (Count III) Fails Because the Criminal Case Did Not Terminate in Kowalevicz's Favor and There Was Probable Cause to Initiate Criminal Proceedings**

To prevail on a malicious prosecution claim, a plaintiff must plead and be able to prove: (1) "that the underlying suit terminated in plaintiff's favor," (2) "malice on the part of the defendant," (3) "lack of probable cause for the underlying suit," and (4) "special injury occasioned by plaintiff as the result of the original action."  *Smith v. United States*, 121 F. Supp. 3d 112, 122 (D.D.C. 2015).  "Under District of Columbia law, probable cause to arrest typically

suffices to establish probable cause to prosecute." *Id.*  But "the probable cause analysis on a malicious prosecution claim differs somewhat from the probable cause analysis related to a false arrest claim because [t]he issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit." *Id.* (internal quotation marks omitted).  "Furthermore, there appears to be a partly subjective element to the probable-cause-to-prosecute analysis insofar as 'probable cause depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it.'" *Id.* "This means that a prosecution is not considered unlawfully malicious even if it 'flow[s] from a belief that turns out to be unfounded[,] as long as it is not unreasonable.'" *Id.*

As a preliminary matter, the complaint's bald assertion that the criminal prosecution was terminated in Kowalevicz's favor, *e.g.*, Compl. ¶¶ 26, 32, without providing any specific factual allegations detailing the nature or cause of that termination, such as a showing of dismissal with prejudice, means that the complaint fails to state a malicious prosecution claim.  *See Thorp v. Dist. of Columbia*, 142 F. Supp. 3d 132, 145 (D.D.C. 2015) ("The bare allegation of a favorable termination is not enough, without *specific* factual allegations detailing the nature or cause of that termination, to raise the viability of the malicious-prosecution claim 'above the speculative level.'") (emphasis in original).

Furthermore, the alleged malicious prosecution claim fails because the criminal case did not terminate "in [Kowalevicz's] favor" within the meaning of this tort.  According to the docket report, the criminal case was dismissed for want of prosecution because the "[g]overnment [was] not ready for trial."  Ex. C (Docket Report for *District of Columbia v. Kowalevicz*, D.C. Superior Court Traffic Case No. 2013 CTF 021193).  That is a dismissal without prejudice.  *See Thorp*, 142 F. Supp. 3d at 145 ("This ["Dismissed for Want of Prosecution" because "Government was not ready to proceed with this case"], of course, is a dismissal *without* prejudice.") (emphasis in

16

original).  That disposition does not "reflect on the innocence of [Kowalevicz]."  *See Clark v. Dist. of Columbia*, No. 16-385 (CKK), 2017 WL 1011418, at \*6 (D.D.C. Mar. 14, 2017) ("[D]ismissal for failure to prosecute has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit.") (internal quotation marks omitted).

Moreover, OAG's decision not to pursue Kowalevicz's prosecution did not reflect on Kowalevicz's innocence.  As part of an internal investigation, an USPP investigator spoke with the Assistant Attorney General who was assigned to prosecute Kowalevicz's criminal case:  that Assistant Attorney General stated there was enough evidence to prosecute the case and that OAG decided not to pursue prosecution due to its lack of resources, not because of lack of evidence or lack of probable cause.  SMF ¶ 27.

The alleged malicious prosecution claim also fails because the USPP did have probable cause for initiating the criminal charges against Kowalevicz for driving under the influence and operating a vehicle while impaired.  Contrary to Kowalevicz's apparent contention, *see* Compl. ¶ 24, the negative breathalyzer results about an hour after his arrest did not vitiate probable cause for the initiation of criminal charges against him.  The legal standard for impairment for both charges merely requires a "level of impairment at which a person is *appreciably* less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle . . . a modern automobile with safety to himself and the public," and does not primarily focus on impairment that can be discerned only through measurement of the amount of alcohol in the breath or blood.  *Muir v. Dist. of Columbia*, 129 A.3d 265, 272 (D.C. 2016) (internal quotation marks omitted; emphasis in original).

Kowalevicz's performance on the standard field sobriety tests, along with his unsafe driving, the strong smell of alcohol emanating from his vehicle and from his person, his slurred

speech, his red, bloodshot, and watery eyes, and his admission that he had a drink, provided sufficient probable cause and evidence of impairment for the USPP to initiate criminal charges against Kowalevicz for driving under the influence and operating a vehicle with while impaired. SMF ¶ 17.  Moreover, OAG concurred that there was probable cause for Kowalevicz's arrest and that there was sufficient evidence to prosecute Kowalevicz for driving under the influence (and operating a vehicle while impaired) twice, first when it signed the *Gerstein* and again when a USPP investigator contacted OAG as part of the internal investigation of Kowalevicz's false arrest complaint.  *Id.* ¶¶ 23, 27.

Accordingly, the Court should grant summary judgment in favor of the United States for the alleged malicious prosecution claim.

## CONCLUSION

For the foregoing reasons, the Court should (i) dismiss Counts I, IV, V and VI for failure to state a claim; and grant Defendant's motion for summary judgment for Counts II and III.

Dated:  May 11, 2017

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar # 415793
United States Attorney

DANIEL VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By:  /s/ Marsha W. Yee
MARSHA W. YEE
Assistant United States Attorney
Civil Division
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Telephone:  (202) 252-2539
Email:  Marsha.Yee@usdoj.gov

*Counsel for Defendant*