UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDREW MARTIN KOWALEVICZ, JR., )
                                       )
                 Plaintiff,        )     Civil Action No. 16-CV-2494 (EGS)
                                         )
v.                              )
                                       )
THE UNITED STATES OF AMERICA,  )
                                       )
            Defendant.     )

## DECLARATION OF LUCAS COLEMAN

I, Lucas Coleman, hereby declare and state:

1.      I am an officer with the United States Park Police ("USPP"). I have been a USPP officer since July/2011.

2.      On November 13, 2013, I was assigned to the USPP District One (D-1) in Northwest Washington, D.C., and worked a shift from 18:00 hours to 06:00 hours. During that shift, I was on patrol in a marked USPP police cruiser.

3.      The USPP does not equip its police cruisers with mobile breathalyzers.

4.      As a USPP officer, I am authorized to enforce traffic laws and regulations in the District of Columbia.

5.      On November 13, 2013, at approximately 22:58 hours, I observed a white Dodge Intrepid vehicle traveling around Washington Circle near the 2300 block of K Street NW.

6.      I observed the vehicle fail to signal a lane change and a turn.

7.      I then followed the vehicle. I observed the vehicle drift out of its lane and make a sudden stop.

8.      I activated my emergency equipment and lights.

9. The vehicle stopped in the middle of the lane, blocking traffic flow, instead of pulling over to the right side of the roadway.

10. I walked up to the driver's side of the vehicle. I immediately detected a strong odor of alcohol coming from within the vehicle. Before I said anything, the driver yelled, "TELL ME WHY YOU STOPPED ME!" The driver's speech sounded slurred. I also observed the driver's eyes were red, bloodshot and watery.

11. The driver admitted that he had one drink.

12. The driver eventually produced a valid Virginia driver's license indicating that he was Andrew Martin Kowalevicz.

13. Based on my observations of Kowalevicz's unsafe driving, the strong odor of alcohol coming from his vehicle, his slurred speech, his red, bloodshot and watery eyes, and his admission that he had a drink, I believed that I had reasonable suspicion to administer standard field sobriety tests ("SFST") to him.

14. I have been trained in administering SFSTs and interpreting results according to NHTSA standards. The 40 hour training course was put on by Sgt. Adam Zielinski in Washington, DC and took place in January of 2012. The course encompassed many areas of study including the three phases of a DUI stop, the proper administration of the three standardized tests, how to properly interpret and recognize the standard clues, and understanding the scoring criteria. As of the date of this arrest, I had previously administered SFST approximately 100-150 times.

15. I asked Kowalevicz to step out of his vehicle to conduct SFST. As he stepped out, I observed that his balance was unsure and he put his hand on his vehicle for balance. I also smelled an odor of alcohol emanating from his person.

16.    I administered three types of SFST to Kowalevicz:  (a) horizontal gaze nystagmus ("HGN"), (b) walk and turn, and (c) one leg stand.

17.    Kowalevicz stated he had no medical conditions that would inhibit his performance on the SFST.

18.    For the HGN, Kowalevicz turned his head twice while following the stimulus (my left index finger), and displayed a lack of smooth pursuit in both eyes, distinct and sustained nystagmus at maximum deviation in both eyes, and onset of nystagmus prior to 45 degrees in both eyes.

19.    For the walk and turn test, Kowalevicz had a difficult time keeping his balance.  I observed Kowalevicz miss the heel to toe on steps 1 and 2, and that he had his arms raised for balance during the entire test.  At one point, he stated, "I'm losing my balance because I'm nervous."

20.    For the one leg stand test, Kowalevicz used his arms for balance for the entire test.  After I instructed Kowalevicz to put his foot down, he continued to keep his foot raised and to look down.  After a moment, he looked up, stared at me blankly, and stated, "I can keep going."

21.    Based on my training and experience, I concluded Kowalevicz's SFST performance indicated intoxication.  In conjunction with my other observations (*i.e.*, Kowalevicz's unsafe driving; the strong smell of alcohol emanating from his vehicle and from his person; his slurred speech; his red, bloodshot, and watery eyes; and his admission that he had a drink), I determined I had reasonable cause to believe that Kowalevicz's ability to operate a motor vehicle was impaired by alcohol or drugs.

3

22.    Under USPP General Order 2510.02, to support any arrest for Driving While Intoxicated ("DWI"), an officer must ensure that the following conditions are met:

    a.    The suspect was operating or in control of a motor vehicle.

    b.    The suspect's operation of the motor vehicle occurred in an area where the officer was authorized to enforce applicable DWI laws and regulations.

    c.    The officer has cause to believe the suspect's ability to operate a motor vehicle was impaired by alcohol and/or drugs.

23.    In accordance with USPP General Order 2510.02, and based on my observations and on the results of the SFST, I arrested Kowalevicz for Driving Under the Influence of Alcohol or Drugs ("DUI").

24.    I transported Kowalevicz to the D-1 station for processing on the DUI charge.

25.    Officer Taylor requested Kowalevicz's consent to perform a breathalyzer test at the D-1 station. Kowalevicz consented and the test was performed. The test results came back negative, with .000 blood alcohol content.

26.    In the District of Columbia, obtaining a blood sample for drug testing requires a warrant or the suspect's consent. Because the USPP does not have staff nurses or personnel trained to obtain blood samples for drug testing, the USPP would need to transport a suspect to a medical facility in order to obtain a blood sample for drug testing. Thus, the USPP does not routinely seek blood testing for a DUI charge where injury or death has not occurred.

27.    Traffic offenses in the District of Columbia are generally prosecuted by the District of Columbia's Office of the Attorney General ("OAG").

28.    In accordance with USPP procedure, I prepared a report of arrest for the DUI charge, also referred to as a *Gerstein*, and submitted it to the OAG.

29.     The OAG reviewed the *Gerstein* and found that the arrest was based on probable cause, and that sufficient evidence existed to further prosecute the charges.  My submission was accepted (also called "papered") that evening by OAG Deputy Chief Whitney Stoebner.

30.     On November 14, 2013, at approximately 01:30 a.m., Kowalevicz was released from USPP custody.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 10th day of May 2017.