# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREW MARTIN KOWALEVICZ, JR.**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 1:16-cv-2494-TNM |

## MEMORANDUM OPINION

The Plaintiff, Andrew Kowalevicz, alleges that he was arrested and charged for driving under the influence of alcohol with no legal justification. He asserts five tort claims against the United States, which employed the officer responsible for the arrest: negligence, false arrest, malicious prosecution, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED). Compl. 5-11. The Government has moved for dismissal and for summary judgment, and both sides have provided affidavits with sharply differing accounts of what occurred. Even construing the facts in the light most favorable to the Plaintiff, I conclude that only his negligence and false arrest claims survive.

### I. Background

The parties agree that just before 11 p.m. on Wednesday, November 13, 2013, Andrew Kowalevicz was in the northwest quadrant of the District of Columbia, driving around Washington Circle. Officer Coleman of the U.S. Park Police began following him as he exited the circle onto New Hampshire Avenue, and initiated a traffic stop shortly thereafter.[1] Compl. 4.

---

[1] According to Dr. Kowalevicz, the stop occurred after he turned left on H Street NW from New Hampshire Avenue NW, and then right on 24th Street NW. Compl. ¶ 7; Kowalevicz Decl. 2,

1

In response to Officer Coleman's questions, Dr. Kowalevicz said that he had consumed one drink.[2] Officer Coleman then administered three field sobriety tests, and arrested Dr. Kowalevicz for driving under the influence of alcohol (DUI). Compl. 4. But when a breathalyzer test was administered at the station about an hour after the arrest, Dr. Kowalevicz's breath alcohol content twice measured 0.000. *Id*. After Officer Coleman submitted a report of the arrest, the District of Columbia Office of the Attorney General (OAG) brought charges against Dr. Kowalevicz for DUI and operating a vehicle while impaired—both criminal misdemeanors—although the charges were eventually dismissed before trial. *See id.* at 4-5. These charges resulted in the revocation of Dr. Kowalevicz's security clearance (Dr. Kowalevicz has a Ph.D. in applied physics, and works for Raytheon Company). *Id.* at 5; Kowalevicz Decl. ¶ 1. Dr. Kowalevicz sued the United States for negligence, false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress.[3] Compl. 5-11.

The parties dispute almost all of the remaining details surrounding the night of the arrest. Supported by an affidavit from Officer Coleman, the Government has moved for summary judgment on the false arrest and malicious prosecution claims, contending that numerous factors provided probable cause for the arrest and subsequent prosecution, including Dr. Kowalevicz's erratic driving, the smell of alcohol on his person, bloodshot eyes, and poor performance on the

---

Opp. Ex. 8 (Kowalevicz Decl.). Officer Coleman's current affidavit does not dispute this, although his original report stated that the vehicle turned left onto I Street. Bindeman Decl. Ex. A at 6-7, Mot. Summ. J. Ex. 3, ECF No. 7-3.

[2] Kowalevicz Decl. ¶ 17 ("I actually [admitted to] only one small mixed drink, with minimal alcohol content.").

[3] The Plaintiff has since voluntarily dismissed his abuse of process claim. Opp. 1 n.1.

2

sobriety tests. Mem. In Support of Def.'s Mot. Dismiss and Mot. for Summ. J. (hereinafter Mot. Dismiss or Mot. Summ. J, as appropriate) at 12-15; Coleman Decl., Mot. Summ. J. Ex. 2 ¶¶ 5-23. The remaining claims, the Government argues, should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Mot. Dismiss 6-11. But Dr. Kowalevicz has provided an affidavit of his own, disputing many of Officer Coleman's factual claims with his own narrative of error-free driving, a single mixed drink two hours before the arrest, excellent performance on the sobriety tests, and zero visual or olfactory indicators of intoxication, as confirmed by the breathalyzer and the observations of a second officer at the station. Kowalevicz Decl. ¶¶ 3-33.[4]

## II. Legal Standards

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at

---

[4] Dr. Kowalevicz has also provided an unsworn statement from his passenger on the night of the arrest in support of his account. Opp. Ex. 6. However, "a court may not consider unsworn statements in determining whether to grant summary judgment." *Bush v. District of Columbia*, 595 F.3d 384, 387 (D.C. Cir. 2010) (affirming the district court's refusal to consider unsworn statements submitted by plaintiffs in an effort to defeat summary judgment).

323. Once this showing has been made, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alteration omitted) (quoting *Iqbal*, 556 U.S. at 678). In this inquiry, a court must "draw all reasonable inferences from those allegations in the plaintiff's favor," but does not "assume the truth of legal conclusions." *Id*.

### III. Analysis

Through the Federal Tort Claims Act, the United States has waived its sovereign immunity for "certain torts committed by federal employees in the scope of their employment." *Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001); 28 U.S.C. § 1346(b). "[T]he FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985). Because the arrest and prosecution of Dr. Kowalevicz occurred in the District of Columbia, I apply the District's local tort law.

**A. The Motion for Summary Judgment**

    **i. False Arrest**

The Government's only argument in support of summary judgment on this count is the existence of "constitutional probable cause," which is an affirmative defense to a claim of false

arrest. *Scales v. District of Columbia*, 973 A.2d 722, 729 (D.C. 2009). "Whether the police have probable cause for an arrest is determined by viewing the totality of the circumstances from the perspective of a prudent police officer and in light of the police officer's training and experience." *United States v. Catlett*, 97 F.3d 565, 573 (D.C. Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 230–32 (1983)). "Probable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent [person] in believing that the [suspect has] committed or [is] committing an offense.'" *Catlett*, 97 F.3d at 573 (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Hall v. District of Columbia*, 867 F.3d 138, 154 (D.C. Cir. 2017).

Officer Coleman arrested the Plaintiff for driving under the influence, in violation of D.C. Code § 50-226.11, which states that "No person shall operate . . . any vehicle in the District: (1) while the person is intoxicated; or (2) While the person is under the influence of alcohol or any drug or any combination thereof." The standard in either case is whether "a person is *appreciably* less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public." *Muir v. District of Columbia*, 129 A.3d 265, 272 (D.C. 2016) (emphasis original) (citation omitted). The Government argues that Dr. Kowalevicz was arrested because of his unsafe driving; his car smelled of alcohol; his eyes were red, bloodshot and watery; he performed poorly on roadside sobriety tests; and his admission that he'd consumed alcohol. Mot. Summ. J. 15.

While the Government's version of events would certainly support a finding of probable cause, it is *the Plaintiff's* version that I must credit at this stage, and he paints a very different picture. According to the Plaintiff, Officer Coleman arrested him despite a perfect driving performance and error-free completion of the sobriety tests. Kowalevicz Decl. ¶¶ 3-33.

5

Moreover, he disputes Officer Coleman's observations about his personal appearance and notes that another officer's description of his appearance at the stationhouse supports his claims, not Officer Coleman's. Kowalevicz Decl. ¶ 16. Dr. Kowalevicz further argues that his 0.000 breath test vindicated his claim that he drank only a negligible amount of alcohol. If this account is to be credited, then Officer Coleman had nothing close to probable cause for arrest. At trial, there would be a genuine, material dispute between the parties about whether Dr. Kowalevicz's driving, demeanor and appearance, and performance on the sobriety tests created probable cause for his arrest. On the false arrest claim, I therefore conclude that the Plaintiff has carried his burden of demonstrating "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

**ii. Malicious Prosecution**

However, the Government is entitled to judgment as a matter of law on the malicious prosecution claim. "[I]n order to support an action for malicious prosecution in the District of Columbia, a plaintiff must plead and be able to prove: 1) that the underlying suit terminated in plaintiff's favor; 2) malice on the part of the defendant; 3) lack of probable cause for the underlying suit; and 4) special injury occasioned by plaintiff as the result of the original action." *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002). Here, the dismissal of Dr. Kowalevicz's DUI case does not constitute a favorable termination under District of Columbia law.

As to whether the misdemeanor case terminated in Dr. Kowalevicz's favor, the District of Columbia Court of Appeals has held that "the termination must reflect on the merits of the underlying action," and "dismissal for failure to prosecute" constitutes "a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the

defendant in the underlying suit." *Brown v. Carr*, 503 A.2d 1241, 1245-46 (D.C. 1986) (internal quotation marks and citations omitted). "Because this element is part of plaintiff's *prima facie* case, it is [his] burden to demonstrate that the termination was favorable." *Cruz-Roldan v. Nagurka*, 246 F. Supp. 3d 155, 159 (D.D.C. 2017); *see also Joeckel*, 793 A.2d at 1282. But "[d]ismissal standing alone tells us little." *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015). "Merely alleging that criminal charges were dismissed is . . . insufficient to plead that the underlying case was favorably terminated." *Id.*

Here, Dr. Kowalevicz effectively alleges dismissal standing alone. Compl. ¶¶ 11, 26 ("The prosecution was terminated in Plaintiff's favor on or about January 6, 2014.") In their summary judgment briefing, both parties attached the relevant District of Columbia Superior Court docket, which states that the charges against Dr. Kowalevicz were "Dismissed for Want of Prosecution" on January 6, 2014, because the "Government [was] not ready for trial." Opp. Ex. 10, ECF No. 12-10; Mot. Summ. J. Ex. C, ECF No. 7-4. The Plaintiff also contends that "the fact that the case was up for trial at least twice before it was dismissed . . . raises an issue of material fact," Opp. 25, but fails to explain why. With this scant record before me, I am less than persuaded.

> Prosecutors may dismiss or *nolle prosequi* cases for a whole host of reasons. Lack of adequate resources, a higher priority for other cases in an overburdened criminal justice system, witness availability problems, the heavy trial schedule of the particular prosecutor, and numerous other reasons all come to mind. None of these reasons necessarily reflect on the innocence of the accused. Moreover, prosecutors will ordinarily have a whole mix of reasons, which may well include the strength of the evidence in the case. But where prosecutors have not stated their reasons, there is really no way for this Court to conclude that these were favorable terminations.

7

*O'Quinn v. District of Columbia*, 1988 WL 23244 at *2 (D.D.C. Mar. 4, 1988) (quoted in *Kenley*, 83 F. Supp. 3d at 42). If a court could not infer a favorable termination on these facts, neither could a reasonable jury. *See Anderson*, 477 U.S. at 248. With no indication that the termination "reflect[ed] on the merits of the underlying action," Dr. Kowalevicz's malicious prosecution claim must fail. *Brown*, 503 A.2d at 1245.[6]

**B. The Motion to Dismiss**

    **i.    Negligence**

The Complaint alleges that Officer Coleman "owed a duty to Plaintiff . . . to act responsibly in his professional interactions," and that he acted "negligently" in undertaking the stop, arrest, and initiation of charges against Dr. Kowalevicz, harming him in various ways, including "great physical discomfort[,] . . . loss of security clearance, [and] loss of income." Compl. ¶¶ 13-15. The Government's only counterargument is that "[i]ntent and negligence are regarded as mutually exclusive grounds for liability," and that "the factual portion of the complaint only refers to intentional acts by Officer Coleman." Mot. Dismiss 6 (quoting *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015)). But unlike in *Harris*, where the plaintiff only described the allegedly tortious acts as "intentional" and failed to "distinguish

---

[6] The parties argue over whether statements by Assistant Attorney General Jeff Cargill, who was assigned to handle Dr. Kowalevicz's case, help or hurt them. *Compare* Mot. Summ. J. 17 ("OAG's decision . . . did not reflect on Kowalevicz's innocence"), *with* Opp. 25 ("[t]he statement that Mr. Kowalevicz's driving 'was not egregious' . . . raises an issue of material fact"). Even if I considered this unsworn and/or hearsay evidence regarding the actual reasons for the case's termination, it would not save the Plaintiff's malicious prosecution count. According to the affidavit of U.S. Park Police Sergeant Janice Bindeman, AAG Cargill told Sergeant Bindeman that "there was enough evidence to prosecute," but "OAG decided to dismiss Kowalevicz's case without prejudice because OAG lacked resources, not because of lack of evidence or lack of probable cause for the arrest." Bindeman Decl. ¶ 6, Mot. Summ. J. Ex. 3, ECF No. 7-3.

8

between negligent and intentional acts," *Harris*, 776 F.3d at 916 (quoting *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011)), Dr. Kowalevicz began by alleging various acts without designating a mens rea, Compl. ¶¶ 7-10, before eventually alleging that Officer Coleman performed these acts "negligently" in Counts I and VI, as well as "intentionally" in Counts II, III, IV, and V. Compl. ¶¶ 14, 18, 24, 30, 38, and 42-43. As Dr. Kowalevicz points out, "[a] plaintiff may properly argue alternative and inconsistent theories of liability to the jury, provided he does not collect damages on both claims." *Dingle v. D.C.*, 571 F. Supp. 2d 87, 99 (D.D.C. 2008). "Though a plaintiff may not combine negligence and intentional torts into a single cause of action, claims may appropriately reach the finder of fact so long as each is presented individually." *Id.* (citing *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000)). Because the Plaintiff here has adequately plead separate counts alleging both negligent and intentional conduct, his negligence claim survives the motion to dismiss.

  **ii.**  **Intentional Infliction of Emotional Distress**

However, the intentional infliction of emotional distress claim has not been adequately pled. "To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002). "Liability will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010) (citation omitted). Rather, "[t]he conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)). "Whether the conduct complained

9

of is sufficiently outrageous is a question of law that should be decided by the court on a motion to dismiss." *Smith v. United States*, 121 F. Supp. 3d 112, 124 (D.D.C. 2015), *aff'd*, 843 F.3d 509 (D.C. Cir. 2016).

The Plaintiff contends that initiating the traffic stop "without reasonable articulable suspicion . . . forcing [Plaintiff] to take unnecessary and humiliating sobriety field tests . . . arresting Plaintiff without probable cause; and fraudulently initiating misdemeanor traffic proceedings . . . in order to conceal Officer Coleman's own wrongdoing" constituted outrageous conduct. Compl. ¶ 37. But Officer Coleman's conduct, even when viewed in the light most favorable to Dr. Kowalevicz, does not meet the high standard for "outrageous" conduct found in the applicable case law.

In *Harris v. District of Columbia*, a court in this jurisdiction dismissed an IIED claim even though the plaintiff alleged that "he was arrested without a warrant during a search at the daycare center, that excessive force was used by 12 officers with guns drawn, that he was detained overnight, and that Sgt. Moye falsified his affidavit" which resulted in the plaintiff's prosecution. 696 F. Supp. 2d 123, 137 (D.D.C. 2010). *Harris* noted that "[t]he only fact alleged about which some question [of outrageousness] might be raised is the allegation that Sgt. Moye intentionally lied in his affidavit" by saying that "he had conducted 'an administrative inspection of the daycare center,'" when in fact he had allegedly "conducted a raid and warrantless search of the daycare center with more than a dozen officers, some with their guns drawn." *Id.* at 137-138. Even if proven at trial, *Harris* reasoned, this misrepresentation was not sufficiently outrageous to support an IIED claim. *Id.* at 138. As in *Harris*, Dr. Kowalevicz's claims of police overreach coupled with trumped-up charges, even if proven, are not "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990)).

To the extent that the Plaintiff leans on allegations of falsehood in Officer Coleman's incident reports, such allegations cannot independently create a jury question on outrageousness. In *Smith v. United States*, a decision later affirmed by the D.C. Circuit, the district court dismissed an IIED claim where the plaintiff alleged that two police officers falsely claimed that the plaintiff had struck an officer with his car, when in fact the car had merely passed at close range. 121 F. Supp. 3d at 124. *Smith* explained that "at least one prior decision in this district strongly suggests that a false report about alleged criminal conduct, standing alone, is insufficiently outrageous to state a claim for IIED." *Id.* (citing *Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005). *Lyles* held that a woman's conduct in "initiating a complaint with the police"—with the claim that her feuding neighbor had attempted to strike her with a copper pipe—"even if false," did not constitute "conduct that rises to the level of 'outrageousness' as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society." 404 F. Supp. 2d at 187. The court reached this conclusion even though the police complaint resulted in the neighbor's "arrest, incarceration and subsequent criminal trial [resulting in acquittal], for a crime that [the neighbor] maintains she never committed." *Id.*

Courts in this jurisdiction have only upheld a finding of outrageousness on significantly more troubling facts. In *Pitt v. District of Columbia*, officers failed to tell prosecutors that "neither victim of the crime believed that Mr. Pitt was the perpetrator," and falsely stated that "an officer observed Mr. Pitt getting into a car 'within seconds' after . . . the robber [left] the building." 491 F.3d 494, 504-6 (D.C. Cir. 2007). Even worse, the record suggested that "at least one officer tampered with evidence in an attempt to link Mr. Pitt to the scene of the crime." *Id.*

11

In *Amobi v. D.C. Dep't of Corr.*, defendant correctional officers faced liability after they showed a police officer who responded to an alleged prison assault "the incriminating incident reports . . . but none of the exculpatory reports." 755 F.3d at 985-86. *See also Tulin*, 994 A.2d at 800-01 (upholding jury verdict in IIED claim where an off-duty officer rear-ended the plaintiff, falsely reported on her radio that she was in distress, and pressured her subordinate to arrest the plaintiff).

Unlike in *Amobi* and *Pitt*, Officer Coleman admittedly disclosed the single most exculpatory piece of information, the fact that Dr. Kowalevicz had blown 0.000 on the breathalyzer,[8] and there is no allegation of evidence tampering. Although the Complaint can be read to allege that Officer Coleman falsified his reports regarding the Plaintiff's driving behavior, appearance, and sobriety tests, Compl. ¶ 37, these falsifications would be more comparable to the exaggerated accounts of the defendant officers' observations in *Smith* that did not rise to the level of outrageous conduct, *see* 121 F. Supp. 3d at 125, rather than the intentional suppression of exonerating information that justified IIED claims in *Amobi* and *Pitt*.

Although Dr. Kowalevicz takes issue with Officer Coleman's probable cause determination, and the Plaintiff's factual allegations are granted every reasonable inference here, an admittedly nervous suspect and a trained officer can easily reach different conclusions about the import of subtle field sobriety tests and driving behavior. The possibility that an officer made a mistake—or even greatly exaggerated the evidence of guilt—cannot transform that issue into a jury question regarding whether the officer's arrest and incident report constitute outrageous conduct, in light of the strenuous definition of "outrageous" that I must employ. *Cf.*

---

[8] Indeed, the Plaintiff himself submitted Officer Coleman's incident report, which contained this plaintiff-friendly fact. *See* Opp. Ex. 4 at 3, ECF No. 12-5.

*id*. The Plaintiff does not claim that Officer Coleman was motivated by any animus, or that his conduct was extreme in any particular way. Compl. 10-11. I find that the Plaintiff has not alleged conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tulin*, 994 A.2d at 800 (citation omitted). The IIED claim must therefore be dismissed.

### iii. Negligent Infliction of Emotional Distress

Like the IIED claim, the NIED claim cannot survive Rule 12(b)(6). "Under District of Columbia law, a plaintiff may make out a claim for negligent infliction of emotional distress in one of two ways." *Clark v. District of Columbia*, 241 F. Supp. 3d 24, 30 (D.D.C. 2017). The first method is to satisfy the standards for the "zone of physical danger test" and show that "serious" and "verifiable" mental distress occurred because the defendant's actions caused the plaintiff to be "in danger of physical injury," and as a result the plaintiff "feared for his own safety." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 798 (D.C. 2011) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990)). Alternatively, a plaintiff may "show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Id*. at 810-11. Here, the Plaintiff has failed to state a claim under either theory.

Although the Plaintiff cites to the "zone of physical danger" test, Opp. 28, the Complaint never alleges physical danger, only "great physical discomfort[,] pain and suffering." Compl. ¶

13

44; *see also* Kowalevicz Decl. ¶29 ("[t]he cuffs were . . . what I perceived as far too tight . . . . I had indentations and a mark on my right hand that lasted until at least 10 am" the following morning). Even in the light most favorable to the Plaintiff, this falls short of alleging actual "danger of physical injury." *Williams*, 572 A.2d at 1066. In fact, the Complaint itself does not rely on this assertion, instead leaning on the claim that "Officer Coleman owed a duty to Plaintiff [] as a Federal Law Enforcement Officer [] to act responsibly." Compl. ¶ 41. But this relationship-based claim fails as a matter of law, since Officer Coleman did not have "an undertaking or relationship with the plaintiff that implicates care for emotional well-being [in which he] knows or should know that the plaintiff is unusually susceptible to suffer emotional distress." *Hedgepeth*, 22 A.3d at 816; *see also Clark*, 241 F. Supp. 3d at 32 ("the investigation of Plaintiff as a suspect in criminal activity and his related arrest may be emotionally distressing to Plaintiff if conducted negligently, [but] it does not form the type of relationship or undertaking between Defendant Manley and Plaintiff that would give rise to a negligent infliction of emotional distress claim"); *Aubin v. District of Columbia*, 2016 WL 509283 at *6 (D.D.C. Feb. 8, 2016) ("Plaintiff . . . wholly fails to allege facts that defendant Hong, a police officer, had the requisite relationship with, or undertook an obligation to, arrestee plaintiff that necessarily implicated plaintiff's well-being such that Hong could be liable for negligent infliction of emotional distress."). Indeed, "[t]o hold otherwise would extend a cause of action to the target of any criminal investigation against an investigating officer." *Clark*, 241 F. Supp. 3d at 32.

## IV. Conclusion

Given the state of the record and applicable law, I conclude that only Dr. Kowalevicz's negligence and false arrest claims can survive. The others merit either dismissal or judgment as a matter of law.[10] A separate order will issue.

Dated: March 13, 2018

TREVOR N. MCFADDEN
United States District Judge

---

[10] Furthermore, I find that the abuse of process claim has been properly dismissed voluntarily, pursuant to Federal Rule of Civil Procedure 41(a)(2).